UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

NATHAN MAXWELL BENFORD,          )
                                 )
            Petitioner,          )
v.                               )     Nos. 1:04-cv-120 / 1:98-cr-77- 02
                                 )     *Edgar*
UNITED STATES OF AMERICA,        )
                                 )
            Respondent.          )

## REPORT AND RECOMMENDATION

### I.     Introduction

Nathan Maxwell Benford ("Benford"), a federal prisoner, has filed a *pro se* motion to vacate,

set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [Doc. No. 1]. The government has filed

its response to Benford's § 2255 motion [Doc. No. 5]. Benford's motion is now ripe for review, and

has been referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) [Doc. No.

6]. In summary, to the extent certain statements in Benford's memorandum in support of his § 2255

motion can be interpreted as a motion for an evidentiary hearing and for the appointment of counsel

to assist him at any such evidentiary hearing [Doc. No. 1, Memorandum at 14], I **RECOMMEND**

such motion be **DENIED**. I also conclude Benford's § 2255 motion is without merit, and I

**RECOMMEND** it be **DENIED AND DISMISSED WITH PREJUDICE** for the reasons set forth

herein.

### II.    Background

#### A.     Procedural Background

Benford was convicted by a jury on March 5, 1999 of conspiracy to distribute and possess

with intent to distribute cocaine hydrochloride ("powder") and cocaine base ("crack") in violation of 21 U.S.C. § 846 (Count One) and of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) (Count Two). *United States v. Stewart*, 306 F.3d 295, 303 (6th Cir. 2002), *cert. denied*, 538 U.S. 1036 (2003). On August 17, 1999, Benford was sentenced to a term of life imprisonment. On September 10, 2002, Benford's conviction and sentence were affirmed by the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") on direct appeal. *Id.* at 332. On November 27, 2002, the district court granted the government's motion pursuant to Fed. R. Crim. P. 35(b) to reduce Benford's sentence. Benford was sentenced to 324 months on Count One and 240 months on Count Two, to be served concurrently. Benford's petition for a writ of *certiorari* was denied by the Supreme Court on May 9, 2003. Benford's § 2255 motion was timely filed on April 19, 2004 [Doc. No. 1].

**B.**    **Factual Background**

The facts of Benford's underlying criminal case are summarized in the Sixth Circuit's opinion on direct appeal:

> In the mid 1990s, FBI agents in Chattanooga, Tennessee, engaged in a long-term investigation into a possible drug trafficking conspiracy involving Nathan Benford, his wife, Rena Yvonne Benford, and several of their associates. The agents obtained authorization for electronic surveillance of land-based telephone lines at several premises as well as mobile phones, which was conducted between April 22, 1998 and July 30, 1998. These wiretaps, in conjunction with traditional surveillance and investigatory methods, revealed a vast drug trafficking conspiracy in the Chattanooga, Tennessee and Louisville, Kentucky areas involving Defendants. The illegal operations were conducted using several premises, including the Uptown Supper Club, which is a nightclub operated by the Benfords, the S&S Market, a convenience store managed by Stewart and owned by her father, as well as several of Defendants' residences. Throughout the investigation, FBI agents acted on the information they received from the wiretap surveillance. At one point, an

2

undercover agent posed as one of Benford's associates and was able
to pick up a package of crack cocaine from one of the co-defendants.

*Stewart*, 306 F.3d at 303.

## III.    Benford's § 2255 motion

### A.    Standard of Review

A court must vacate and set aside a sentence if it finds that "the judgment was rendered

without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to

collateral attack, or that there has been such a denial or infringement of the constitutional rights of

the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255.  Under

Rule 4 of the Governing Rules, the court is to consider initially whether the face of the motion itself,

together with the annexed exhibits and prior proceedings in the case reveal the movant is not entitled

to relief.  If it plainly appears the movant is not entitled to relief, the court may summarily dismiss

the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief.

*Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th

Cir. 1961).  "Conclusions, not substantiated by allegations of fact with some probability of verity,

are not sufficient to warrant a hearing."  *Green v. Wingo*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735

(citations omitted).  A motion that merely states general conclusions of law without substantiating

allegations with facts is without legal merit.  *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir.

1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be

one of constitutional magnitude which had a substantial and injurious effect or influence on the

proceedings.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case);

3

*Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 998 (1978). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

A § 2255 motion is not a substitute for a direct appeal and it cannot do service for an appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Grant*, 72 F.3d at 506; *United States v. Walsh*, 733 F.2d 31, 35 (6th Cir. 1984). Issues which are presented and considered on direct appeal cannot be litigated again in a § 2255 proceeding absent exceptional circumstances or an intervening change in the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996); *DuPont v. United States*, 76 F.3d 108, 110-11 (6th Cir. 1996).

**B.**     **Issues**

In support of his § 2255 motion, Benford claims:

1.     He was denied effective assistance of counsel when his trial counsel failed to file a motion to dismiss the indictment on the ground that it alleged a conspiracy which occurred after Benford had begun serving federal time;

2.     He was denied effective assistance of counsel when his trial counsel failed to file a motion to dismiss the superseding indictment;

4

3.	He was denied effective assistance of counsel when his trial counsel failed to submit affidavits proving Benford's claim that the affidavit which supported the application for a wiretap was false.

4.	He was denied effective assistance of counsel when his trial counsel failed to cite the relevant Sixth Circuit authorities to support an objection to the admission of alleged hearsay evidence;

5.	He was denied effective assistance of counsel when his trial counsel failed to object to the admission of the testimony of one of his alleged co-conspirators, Cleveland Billingsley ("Billingsley"), under Fed. R. Evid. 801 (d)(2)(E);

6.	He was denied effective assistance of counsel when his trial counsel failed to object to the admission of "other acts evidence" by Billingsley under Fed. R. Evid. 404(b);

7.	He was denied effective assistance of counsel when his trial counsel failed to challenge the makeup of the jury venire at either the pre-trial stage or at voir dire;

8.	He was denied effective assistance of counsel when at sentencing his trial counsel failed to object to his offense level not being reduced by three points for acceptance of responsibility under U.S.S.G. § 3E1.1;

9.	He was denied effective assistance of counsel when his trial counsel entered into a stipulation that the substance sold by a co-conspirator was cocaine base; and

10.	He was denied effective assistance of counsel on direct appeal when appellate counsel failed to challenge the order of forfeiture.

[Doc. No. 1, Memorandum at 6-19].

**C.	Analysis**

All of Benford's claims boil down to the argument his retained counsel, William Ortwein, rendered constitutionally ineffective assistance during the pretrial, trial, and appeal proceedings.

5

1.    **Ineffective Assistance Standard of Review**

The Sixth Amendment provides criminal defendants with the right to reasonably effective assistance of counsel.  U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To prove an ineffective assistance of counsel claim, a petitioner usually must show (1) counsel's deficient representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced petitioner's defense so as to render the trial unfair and the result unreliable.  *Strickland*, 466 U.S. at 687-88.

To satisfy the prejudice prong of the *Strickland* test, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  "The essential question is whether better lawyering would have produced a different result."  *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993).  Thus, the court must focus on whether counsel's errors, if any, have likely undermined the reliability of and confidence in the result.  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  With regard to *Strickland* the Sixth Circuit has stated:

> To show deficiency, the defendant must identify specific "acts or omissions [that] were outside the wide range of professionally competent assistance." [*Strickland*, 466 U.S.] at 690.  To show prejudice, the defendant must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  This court has read *Strickland* as permitting a conclusion of ineffective assistance of counsel "only if [counsel's] performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992), *cert. denied*, 113 S. Ct. 2969 (1993).

*Borch v. United States*, 47 F.3d 1167, 1995 WL 7979, * 2 (6th Cir. Jan. 9, 1995), *cert. denied*, 514

6

U.S. 1134 (1995). As the failure to establish prejudice is dispositive of a claim of ineffective assistance of counsel, the court need not address the reasonableness of counsel's behavior. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). In any event, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689; *Sims v. Livesay,* 970 F.2d 1575, 1579-80 (6th Cir. 1992).

To prevail on his claims of ineffective assistance of counsel, Benford must demonstrate a "'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994); *see Brecht,* 507 U.S. at 637. Because his conviction and sentence are final, Benford "'[M]ust clear a significantly higher hurdle than would exist on direct appeal" in order to obtain relief. *See Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (quoting *United States v. Frady,* 456 U.S. 152, 166 (1982)).

### 2.    Benford's Claims of Ineffective Assistance

*Failure to Move for Dismissal of the Indictment*

In the first of the ten issues identified above, Benford contends his trial counsel was ineffective for failing to file a motion to dismiss the original indictment [Doc. No. 1, Memorandum at 7-8]. The indictment charged Benford with participation in a conspiracy to distribute both powder and crack cocaine "from at least May 1988, through on or about July 30, 1998 . . ." [Case No. 1:98-CR-77, Doc. No. 67 at 3]. Benford argues his trial counsel should have moved to dismiss the original indictment, because, as allegedly known to his trial counsel, Benford was serving a sentence in federal prison on a firearms conviction from April 1994 until his release on May 12, 1995, and had at the time of this conviction allegedly "ended all association with any alleged drug objective."

7

[Doc. No. 1, Memorandum at 7-8].

It was an issue for the jury to determine whether Benford had "ended" his participation in the conspiracy after his prior conviction. To establish a drug conspiracy under 21 U.S.C. § 846, the government must prove "'that a conspiracy existed, that the accused knew of the conspiracy, and that he knowingly and voluntarily joined it.'" *United States v. Ledezma*, 26 F.3d 636, 640 (6th Cir. 1994), *cert. denied*, 513 U.S. 942 (1994) (quoting *United States v. Barrett*, 933 F.2d 355, 359 (6th Cir. 1991)). "The government need not show that a defendant participated in all aspects of the conspiracy; it need only prove that the defendant was party to the general conspiratorial agreement." *Ledezma*, 26 F.3d at 640. "[T]he connection between the defendant and the conspiracy need only be slight." *Id.*

Thus, the mere fact Benford was incarcerated during some of the conspiracy does not mean he could not have been part of the conspiracy. Moreover, with regard to Benford's activities while in prison, the presentence investigation report ("PSR") states in pertinent part:

> 21. Nathan Benford and members of his family have been known drug traffickers in the Chattanooga area since the early 1980's. The defendant started out small – that is, he was "slinging" small amounts of marijuana, cocaine powder and possibly other drugs; but by the mid-to-late 1980's, Benford was dealing almost exclusively in cocaine powder and crack cocaine and his distribution organization had become quite successful. Although there would be times when Benford would be arrested and imprisoned, his family, including his mother and later his wife, would carry on the business in Benford's absence although he would still direct their activities from prison.

PSR at ¶ 21.

Further, Benford's trial counsel filed objections to the PSR, which included the following

relevant specific objections:

> 3.      Insofar as any computation of drugs from March 3, 1989, until March 9, 1990, the defendant objects to those calculations as he was incarcerated in the Metro Jail of Davidson County, Tennessee.

> 4.      Insofar as any drugs were used for the purpose of calculating the sentence from November 4, 1993, until May 12, 1995, as the defendant was incarcerated and in the custody of the Federal Government.

Objections to PSR, at 3.

> With regard to these objections the Probation Officer stated in the Addendum to the PSR:

>> The probation officer did not rely on drug amounts outside of the conspiracy to determine the statutory penalties or to calculate the sentencing guidelines. The probation officer would like to point out that as to Count One of the Superseding Indictment, the indictment *charges that from at least May 1988 through on or about July 30, 1998*, (all of the) defendants did conspire to violate 21 U.S.C. § 841, to distribute and possess with intent to distribute cocaine hydrochloride and cocaine base ("crack"), a Schedule II controlled substance, in violation of 21 U.S.C. § 846. There are no pre-1988 drug amounts which are used to ascertain a statutory penalty or for guideline purposes.

>> As far at the reliability of the drug amounts are concerned, the probation officer relied on the drug amounts presented at trial. There were no drug amounts which were considered for either guideline purposes or to determine statutory penalties which occurred while Benford was incarcerated. However, there were times when Benford would be arrested and imprisoned, his family, including his mother and later his wife, would carry on the business in Benford's absence although he would still direct their activities from prison.

Addendum to PSR at 3.

Contrary to Benford's assertions, he has presented no evidence that his participation in the drug conspiracy ended when he was incarcerated. Thus, his incarceration during a portion of the time-frame charged in the conspiracy provided no basis for the dismissal of the indictment.

9

Accordingly, I conclude Benford's claim his trial counsel rendered ineffective assistance when counsel failed to move for dismissal of the original indictment on the ground Benford was incarcerated during some of the time-frame charged in the conspiracy in Count One of the original indictment is without merit, and I **RECOMMEND** it be **DISMISSED**.

### *Failure to Move for Dismissal of the Superseding Indictment*

In the second of the ten issues identified above, Benford contends his trial counsel was ineffective for failing to move to dismiss the superseding indictment on Speedy Trial Act grounds [Doc. No. 1, Memorandum at 8-12]. Benford argues the superseding indictment simply restated or "gilded" the criminal charges made in the original indictment, and, therefore, the superseding indictment had to be filed within thirty days of his arrest on July 30, 1998 [*id.*]. The superseding indictment was filed on October 27, 1998 [Case No. 1:98-cr-77, Doc. No. 207].

The original one-count indictment, which was filed on August 26, 1996, charged Benford and 29 other co-defendants/co-conspirators with conspiracy to distribute and possess with intent to distribute powder and crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 [Case No. 1:98-cr-77, Doc. No. 67]. The original indictment also set forth various forfeiture allegations [*id.* at 4-10].

The superseding indictment charged Benford, and 27 co-defendants/co-conspirators, with conspiracy to distribute and possess with intent to distribute powder and crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 and, like the original indictment, it also included various forfeiture allegations against the named defendants [Case No. 1:98-cr-77, Doc. No. 207]. The superseding indictment added an additional 17 counts. In particular, Benford was charged in count two of the superseding indictment with money laundering in violation of 18 U.S.C. §§

10

1956(a)(1)(A)(i) and (a)(1)(B)(i) and 2, and was charged in count three of the superseding indictment with money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (a)(1)(B)(i)[1] [*id.*].

"A charge contained in a superseding indictment which was not included in the original complaint does not violate the Speedy Trial Act." *United States v. Gastelum-Almeida*, 298 F.3d 1167, 1173 (9th Cir), *cert. denied*, 537 U.S. 986 (2002). "A superseding indictment issued before the original indictment is dismissed may issue more than thirty days after the arrest. Not all charges must be filed within the first thirty day period." *Id.* An original indictment filed within thirty days of the defendant's arrest "tolls the running of the thirty day provision" of the Speedy Trial Act. *United States v. Berry*, 90 F.3d 148, 151 (6th Cir.), *cert. denied*, 519 U.S. 999 (1996). Even "[w]hen a defendant is indicted within the thirty-day period and then re-indicted on identical charges based on identical facts after the expiration of the thirty-day period, the . . . thirty-day rule is satisfied . . . ." *Id.* It is only when a timely filed original indictment is dismissed, that the remainder of the thirty-day period begins to run. *Id.*

Benford was arrested on July 30, 1998, and the original indictment timely issued on August 26, 1998, within the thirty-day period provided for in the Speedy Trial Act [Case No. 1:98-cr-77, Doc. Nos. 4, 67]. At the time the superseding indictment was issued on October 28, 1998, the original indictment had not been dismissed.

Contrary to Benford's contentions, the superseding indictment did not "gild" or restate the charges in the original indictment. As previously noted, the superseding indictment was not

---

[1] Benford was found guilty of the charges in counts one and two of the superseding indictment, and he was found not guilty of the charge in count three.

identical to the original indictment in that it charged Benford with two counts of money laundering in addition to the drug distribution conspiracy charged in the original indictment. In *United States v. Derose*, 74 F.3d 1177, 1184 (11th Cir. 1996), the Eleventh Circuit held:

> . . . Congress considered and declined to follow the suggestion that the Speedy Trial Act's dismissal sanctions should be applied to a subsequent charge if it arose from the same criminal transaction or event as those detailed in the initial complaint or were known or reasonably should have been known at the time of filing the initial complaint. *United States v. Napolitano*, 761 F.2d 135, 137-38 (2d Cir. 1985) (citing A. Partridge, Legislative History of Title I of the Speedy Trial Act of 1974, pp. 194-95, Federal Judicial Center, 1980). Second, it is well established that conspiracies and substantive offenses are separate and distinct offenses requiring proof of different elements. *E.g.*, *Callanan v. United States*, 364 U.S. 587, 593, 81 S. Ct. 321, 325, 5 L.Ed.2d 312 (1961). Thus, it is questionable whether a substantive offense can ever gild a conspiracy charge, since they are separate and distinct offenses.

Thus, I conclude: (1) the superseding indictment was not untimely filed in violation of the provisions of the Speedy Trial Act, and (2) the superseding indictment did not gild the original indictment. The superseding indictment added substantive charges of money laundering to the initial drug distribution conspiracy charge against Benford. Although the money laundering charges involved the proceeds of the drug distribution conspiracy, the conspiracy charge and two money laundering charges were separate offenses. *Id.*

Accordingly, I conclude Benford's claim his trial counsel rendered ineffective assistance when he failed to move for dismissal of the superseding indictment on the ground it violated the provisions of the Speedy Trial Act is without merit, and I **RECOMMEND** it be **DISMISSED**.

### *Failure to Submit Affidavits Concerning the Application for a Wiretap*

In the third of the ten issues identified above, Benford claims he was denied effective assistance of counsel when his trial counsel failed to submit affidavits proving the affidavit

supporting the application for a wiretap was false [Doc. No. 1, Memorandum at 11-12]. In

addressing the wiretap evidence on direct appeal, the Sixth Circuit stated:

> At the trial of Nathan and Rena Benford, the government introduced
> into evidence recorded telephone conversations by several members
> of the drug conspiracy. The Benfords both moved to suppress the
> wiretap information prior to trial, and also requested an evidentiary
> hearing on the issue; however, the district court denied the motions
> to suppress . . . On appeal, the Benfords contend that the affidavit
> used to obtain the wiretap warrant did not satisfy the requirements of
> 18 U.S.C. § 2518(1)(c) and . . . that they were improperly denied an
> evidentiary hearing on this matter in violation of *Franks v. Delaware*,
> 438 U.S. 154, 98 S. Ct. 2674, 57 L.Ed.2d 667 (1978), because some
> of the statements in the affidavit were either knowingly false or made
> with reckless disregard as to their veracity. We reject both of these
> claims.
> . . .
>
> In the instant case, law enforcement officials alleged that wiretap
> surveillance was the only investigative technique reasonably likely
> to establish the full scope of the alleged criminal enterprise. In a 100
> page affidavit, they provided a tremendous amount of information
> supporting this claim, including a statement as to the element of
> danger involved and specific investigative techniques that had been
> utilized, including confidential informants and cooperating witnesses,
> controlled purchases of drugs, consensual recordings, physical
> surveillance, and telephone records. Based upon this affidavit, the
> district court determined that the need for electronic surveillance had
> been established, fulfilling its duty under 18 U.S.C. § 2518(3)(c).
> **Neither of the Benfords presented the district court with any
> affidavits to support their claim that the affidavit was false in any
> respect.** Instead they merely argued that electronic surveillance was
> not necessary under the circumstances because other law enforcement
> techniques were successful and the two major co-conspirators who
> were purported to be dangerous were not even charged in the case. .
> . .
>
> In addition to being conclusory, the Benfords' arguments are simply
> wrong as a matter of law. In endeavoring to secure a wiretap warrant,
> the government need not prove the impossibility of other means of
> obtaining information. Instead, the necessity provisions merely
> require that law enforcement officials "give serious consideration to
> the non-wiretap techniques prior to applying for wiretap authority

13

and that the court be informed of the reasons for the investigators'
belief that such non-wiretap techniques have been or will likely be
inadequate." *United States v. Lambert*, 771 F.2d 83, 91 (6th Cir.
1985). This precise information was provided in the instant case.

*Stewart*, 306 F.3d at 303-06 (emphasis added).

Benford does not present any evidence supporting his claim the affidavit in support of the

application for a wiretap was false. Benford does not assert such evidence actually existed and could

have been presented by trial counsel. Instead, Benford merely points to the portion of the Sixth

Circuit opinion which notes neither Benford nor his wife, co-defendant Rena Benford, presented any

proof in support of their claim the affidavit supporting the wiretap application was false. *Stewart*,

306 F.3d at 305. Benford then concludes this was ineffective assistance on the part of his trial

counsel [Doc. No. 1, Memorandum at 11-12]. By commenting on the lack of evidence supporting

the allegation the affidavit in support of the application for a wiretap contained some statements that

were either allegedly knowingly false or made with reckless disregard as to their veracity, the Sixth

Circuit did not hold or suggest Benford's trial counsel's performance was deficient. Rather, the

Sixth Circuit found the motion to suppress and for a *Franks* hearing was properly denied given the

absence of supporting evidence.

Further, the Sixth Circuit noted that trial counsel for the Benfords ". . . argued that electronic

surveillance was not necessary under the circumstances because other law enforcement techniques

were successful and the two major co-conspirators who were purported to be dangerous were not

even charged in the case." *Stewart*, 306 F.3d at 304. Thus, while Benford's trial counsel may not

have presented affidavits challenging the veracity of the statements in the affidavit in support of the

application for a wiretap, he did present arguments about the wiretaps in support of the motion to

suppress and for a *Franks* hearing. Benford has failed to allege specific facts that, if true, would

14

entitle him to relief, and his conclusory statements that no affidavits were submitted by his attorney are not enough to require a hearing on the § 2255 motion. *See United States v. Walker*, No. 96-2419, 2000 WL 353518, at * 4 (6th Cir. Mar. 30, 2000).

Accordingly, I conclude Benford's claim his trial counsel rendered ineffective assistance when he failed to present affidavits in support of Benford's claim that the affidavit in support of the application for a wiretap contained some statements that were either allegedly knowingly false or made with reckless disregard as to their veracity is without merit, and I **RECOMMEND** it be **DISMISSED**.

### Failure to Object to Hearsay Evidence

In the fourth, fifth, and sixth of the ten issues identified above, Benford contends his trial counsel was ineffective for failing to "present any Sixth Circuit authorities in support of his objections to hearsay testimony during petitioner's trial." [Doc. No. 1, Memorandum at 12-13]. Benford asserts there are numerous instances of such evidentiary errors. He does not, however, specifically identify any of these errors, except for portions of the testimony of Billingsley [*id.* at 13].

Benford has identified the relevant portion of Billingsley's testimony as:

> A     I started selling drugs.
> Q     What kind of drugs you start to sell?
> A     Cocaine and heroin.
> Q     And back in 1981 this would have been?
> A     Yes. Last of '81, first of '82.

[*Id.*]. Benford contends this testimony by Billingsley about Billingsley's history of selling drugs prior to the time the alleged conspiracy commenced was admitted in violation of Fed. R. Evid. 801(d)(2)(E), and asserts his trial counsel was ineffective for failing to object to the admission of

15

this testimony.

Benford also contends his trial counsel was ineffective for failing to object to certain "other acts" evidence by Billingsley under Fed. R. Evid. 404(b) [Doc. No. 1, Memorandum at 13-14]. Specifically, Benford contends Billingsley testified about a drug source from Atlanta, Georgia from the early 1980s named "Raymon Hogan/Sam Hogan" [*id.* at 14]. Benford contends that as Hogan was not charged as a co-conspirator, Billingsley's testimony was more prejudicial than probative and should have been excluded. He contends his trial counsel was ineffective for failing to object to this evidence on the ground its probative value was substantially outweighed by its prejudicial effect [*id.*].

As noted, Benford contends his trial counsel was ineffective for failing to properly object to certain identified testimony of Billingsley allegedly admitted in violation of Fed. R. Evid. 801(d)(2)(E) or to "other acts" testimony allegedly admitted in violation of Fed. R. Evid. 404(b). In addition, Benford contends there were numerous instances of such evidentiary errors by his trial counsel. However, Benford specifically identifies only portions of Billingsley's testimony about his involvement in drug activity in the early 1980s, which preceded the date charged in the conspiracy count of the superseding indictment, and testimony about an unindicted source or sources [Doc. No. 1, Memorandum at 13-14]. Benford asserts "[t]here are several other testimonies that violated these exact same rules and procedures presented above but in order to name each one the Petitioner will exceed the list of pages for presenting his claims on this Habeas Corpus. A[n] evidentiary hearing is requested for further rights to present these claims, plus the Petitioner needs an Attorney to assist at this evidentiary hearing." [*Id.* at 14].

With regard to Benford's claim that there were numerous instances when his trial counsel

16

was ineffective for failing to object to the admission of alleged hearsay testimony beyond the two instances of co-conspirator testimony he has specifically identified, such conclusory allegations are not the basis for § 2255 relief. In a § 2255 motion, the petitioner must allege "specific and particularized, not general or conclusory" facts, which would entitle him to relief if proven. *United States v. Knox,* 2005 WL 1259633 (D. Kan. May 27, 2005) (quoting *Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *cert. denied*, 517 U.S. 1235 (1996)). *See also Walker*, 2000 WL 353518, at *4 (Under 28 U.S.C. § 2255, "[t]o warrant a hearing, [a] defendant must allege specific facts that, if true, would entitle him to relief. Mere conclusory statements are not enough to require a hearing"). In failing to identify these "several other testimonies" with specificity, Benford has not satisfied the requirements for either § 2255 relief or an evidentiary hearing on his claims. *Id.* Because an evidentiary hearing on these claims is not warranted, counsel need not be appointed to assist Benford with presenting these claims at an evidentiary hearing.

Moreover, contrary to Benford's contentions, Fed. R. Evid. 801(d)(2)(E) is not applicable to Billingsley's testimony concerning his drug-related activity prior to the commencement of the conspiracy. Rule 801(d)(2)(E) "provides that a statement is not hearsay if it is offered against a party and is a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." *United States v. Wilson*, 168 F.3d 916, 920 (6th Cir. 1999). Billingsley's testimony about his drug activity prior to the commencement of the conspiracy was not a statement in furtherance of the conspiracy. The Sixth Circuit has described a statement in furtherance of a conspiracy as:

> A statement is "in furtherance of" a conspiracy if it is intended to promote the objectives of the conspiracy, but it need not actually advance the conspiracy. *United States v. Hitow*, 889 F.2d 1573, 1581 (6th Cir. 1989). Statements identifying the participants and their

roles in the conspiracy, *United States v. Clark*, 18 F.3d 1337, 1342 (6th Cir. 1994), statements updating a conspirator on the progress of activities of a coconspirator, *United States v. Rios*, 842 F.2d 868, 874 (6th Cir. 1988), or statements intended to gain the "trust and assurance" of coconspirators, *id.*, may all be "in furtherance of" a conspiracy."

*United States v. Brown*, 221 F.3d 1336, 2000 WL 876382, at *8 (6th Cir. Jun. 3, 2000). Thus, Billingsley's testimony was not subject to Rule 801(d)(2)(E) and Benford's trial counsel was not ineffective for failing to make an objection to Billingsley's testimony under Rule 801(d)(2)(E).

Benford also asserts his counsel was ineffective for failing to object to the admission of Billingsley's testimony under Fed. R. Evid. 404(b). Fed. R. Evid. 404(b) states in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

"[I]n determining the admissibility of bad acts evidence under Rule 404(b), a trial judge is accorded 'broad discretion.'" *United States v. Melton*, 991 F.2d 797, 1993 WL 122098, at *1 (6th Cir. Apr. 20, 1993), *cert. denied*, 510 U.S. 885 (1993) (quoting *United States v. Vance*, 871 F.2d 572, 576 (6th Cir.) *cert. denied*, 403 U.S. 933 (1989)). When presented with an objection to evidence under Fed. R. Evid. 404(b), the district court must follow a two-step process: first, it must determine "whether the evidence would serve a permissible purpose such as one of those listed in the second sentence of Rule 404(b);" and "[i]f so, the court must consider whether the probative value of the evidence is outweighed by its potential prejudicial effect" under Fed. R. Evid. 403. *Id.* at *2 (quoting *United States v. Huddleston*, 811 F.2d 974, 976 (6th Cir. 1987), *aff'd*, 485 U.S. 681 (1988)). The district court has "'very broad' discretion in determining whether the danger of undue prejudice outweighs the probative value of the evidence." *Whitis v. United States*, 62 F.3d 1418,

18

1995 WL 462423, at *8 (6th Cir. Aug. 3, 1995), *cert. denied*, 516 U.S. 1032 (1995)) (quoting *United States v. Vance*, 871 F.2d 572, 576 (6th Cir. 1989). "'[U]ndue prejudice' would seem to require exclusion only in those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." *Id.* (quoting *United States v. Masters*, 622 F.2d 83, 87 (4th Cir. 1980)).

Billingsley's testimony that he was involved in drug activity in the early 1980s, prior to the date charged in the conspiracy count of the superseding indictment, and that drugs were purchased from the unindicted source(s), was background evidence. Such testimony was not evidence concerning Benford's character which falls within the purview of Rule 404(b). However, even assuming *arguendo* it was 404(b) evidence, it would not have been properly excluded under Fed. R. Evid. 403 as more prejudicial than probative, because the portion of Billingsley's testimony complained about by Benford cannot reasonably be said to have affected the jury's decision to convict Benford. This is particularly true where, as noted by the Sixth Circuit, the government presented overwhelming evidence of Benford's drug activity and his money laundering, including other testimony of Billingsley as to Benford's drug deals during the time frame charged in the indictment. *See Stewart*, 306 F.3d at 324-25. Thus, Benford cannot show his trial counsel was deficient in failing to object to the identified portions of Billingsley's testimony under Rule 404(b) or that Benford suffered any prejudice as the result of his trial counsel's failure to so object.

Accordingly, I conclude Benford's claim his trial counsel rendered ineffective assistance when he failed to object to the admission of allegedly numerous instances of hearsay, including the testimony of Billingsley, under either Fed. R. Evid. 801(d)(2)(E) or Fed. R. Evid. 404(b) is without

merit, and I **RECOMMEND** it be **DISMISSED**. To the extent the statements in Benford's memorandum can be interpreted as a motion for an evidentiary hearing on his conclusory claims his trial counsel was ineffective for failing to object to other unspecified instances of hearsay testimony, and for the appointment of counsel to assist him in presenting those claims at an evidentiary hearing [Doc. No. 1, Memorandum at 14], I further **RECOMMEND** such motion be **DENIED**.

### Counsel's Failure to Challenge the Makeup of the Jury Venire

In the seventh of the ten issues identified above, Benford asserts his trial counsel rendered ineffective assistance when he failed to challenge the makeup of the jury venire [Doc. No. 1, Memorandum at 16-17]. Benford states:

> The Jury Selection and Service Act of 1968 ("JSSA") sets forth guidelines for selecting grand and petit juries in federal courts. The JSSA requires that each judicial district devise a plan for randomly selecting jurors based on voter registration rolls or lists of actual voters.
>
> The Eastern District of Tennessee does not comply with the above procedures in selection of their grand or petit juries, this is true due to the fact that in each alleged criminal case I personally has assisted a fellow inmate with the jury transcripts does not be a part of the record. This District for the Eastern District of Tennessee use only their hand pick juries members.

[*Id.* at 16]. Benford contends his trial counsel should have challenged the makeup of the jury venire on the following grounds:

> (1) the grand jury and the petit jury were not a fair cross section of the community; (2) Hispanics were systematically excluded from these juries; (3) only African-Americans was hand picked by the District Court was allowed to served on the juries not Hispanics which was discriminated against in the Eastern District of Tennessee, by only recognizing only African-Americans as cognizable group worthy of special treatment.

[*Id.* at 16-17]. Benford further asserts "[t]he area of town [he] and his wife did business in,

represented several Hispanics, wherefore Hispanics should have been part of the jury list." [*Id.*].

The Sixth Amendment right to "an impartial jury of the State and district wherein the crime shall have been committed" includes the right to a jury drawn from a fair cross-section of the community. *United States v. Forest*, 355 F.3d 942, 953 (6th Cir.), *cert. denied*, 125 S. Ct. 174 (2004) (citing *Taylor v. Louisiana*, 419 U.S. 522, 526, 530 (1975)). But there is "no requirement that petit juries actually chosen must mirror the community." *Taylor*, 419 U.S. at 538. To "establish a prima facie violation of the fair-cross-section requirement, a criminal defendant must show: (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the under-representation is due to a systematic exclusion of the group in the jury selection process." *Forest*, 355 F.3d at 953 (citing *Duren v. Missouri*, 439 U.S. 357, 364 (1979)).

Benford's conclusory allegations about the jury venire do not show his counsel was ineffective for failing to challenge the makeup of the jury venire. As noted, Benford has asserted "several Hispanics" live in the area of town where his business was located. This assertion, however, does not support a claim of underrepresentation or show the venire selection process is not race neutral. Benford's reference to certain facts, allegedly known to him but not part of the record, also is insufficient to show the selection process for the jury venire is not race neutral or to show an underrepresentation or a "systematic exclusion." *See United States v. Buchanan*, 213 F.3d 302, 310 (6th Cir.), *cert. denied*, 529 U.S. 1080 (2000) (even if defendants could show the venire for their trial was underrepresentative, this is not evidence of a "systematic exclusion").

Accordingly, I conclude Benford's claim his trial counsel rendered ineffective assistance

when he failed to challenge the makeup of the jury venire is without merit, and I **RECOMMEND** it be **DISMISSED**.

### *Acceptance of Responsibility*

In the eighth of the ten issues identified above, Benford asserts his trial counsel rendered ineffective assistance at sentencing when he failed to argue Benford was entitled to a two-point reduction in his offense level under U.S.S.G. § 3E1.1 because he "accepted responsibility" at his sentencing [Doc. No. 1, Memorandum at 17-18]. Benford further argues he should have been entitled to a reduction for acceptance of responsibility because, during his trial, he and his wife entered into a stipulation that a bag he purchased from an alleged co-conspirator contained 22.6 grams of crack [*id.* at 18].

It is the defendant's burden to prove his acceptance of responsibility under USSG § 3E1.1 by a preponderance of the evidence. *United States v. Lawson*, 266 F.3d 462, 466 (6th Cir. 2001); *United States v. Banks*, 252 F.3d 801, 806 (6th Cir. 2001). A reduction for acceptance of responsibility will rarely be made if the defendant chooses to go to trial. *United States v. Khalil*, 279 F.3d 358, 371 (6th Cir. 2002).

With regard to a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, the PSR, which was prepared prior to Benford's sentencing, states:

> [Benford] has not clearly demonstrated his acceptance of responsibility for his offense, nor has he truthfully admitted the conduct comprising his offenses of conviction. Benford put the government to its burden of proof at trial. He did not take his case to trial to assert and preserve issues relating to factual guilt, such as a constitutional challenge; rather, Benford took his case to trial because he believed he could convince a jury he was not guilty of the charges. Given the definition of acceptance of responsibility in U.S.S.G. § 3E1.1, a reduction will not be calculated.

PSR, ¶ 80.  The application notes to U.S.S.G. § 3E1.1 in the 1998 Guidelines Manual, the version

of the guidelines which applied a Benford's sentencing, state in pertinent part:

> 2. **This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse.**  Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction.  In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial.  This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (<u>e.g.</u>, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).  In each such instance, however, **a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct**.

U.S.S.G. §3E1.1, comment. n.1 (emphasis added).

Benford put the government to its burden of proof at trial.  Thus, Benford's claims he was

entitled to a two point reduction in his total offense level under U.S.S.G. § 3E1.1 because after

conviction he allegedly accepted responsibility at his sentencing or because he entered into a

stipulation concerning the amount of crack he purchased from an alleged co-conspirator, are

meritless.

Accordingly, I conclude Benford's claim his trial counsel rendered ineffective assistance at

sentencing when he failed to contend Benford was entitled to a two-point reduction in his total

offense level under U.S.S.G. §3E1.1 for "acceptance of responsibility" is without merit, and I

**RECOMMEND** it be **DISMISSED**.

*Stipulation*

In the ninth of the ten issues identified above, Benford alleges his trial counsel was ineffective for having Benford "stipulate to a laboratory report 'that a bag containing cocaine base that was purchased from Michael Talley (an alleged Co-Conspirator) . . . was 22.6 grams of cocaine base'." [Doc. No. 1, Memorandum at 18 (quoting record)]. Benford asserts this was an admission of an essential element of the offense, and that instead of agreeing to the stipulation, trial counsel should have had Benford plead guilty to the conspiracy count charged in the initial indictment [*id.* at 19]. In support of his argument Benford relies on the decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

In agreeing to the stipulation, Benford did not admit his guilt to the conspiracy charge, he merely avoided the need to present foundation proof concerning the veracity/accuracy of the report – which had it been presented at trial would most likely have been indisputable. Further, Benford was not held accountable for the 22.6 grams of crack purchased from Talley in the computation of the drug quantity used to determine his sentence. The PSR noted "[a]lthough Benford's conspiracy involved the possession of over 150 kilograms of cocaine powder . . . in calculating the offense level, the probation officer has relied on several very specific incidents presented at trial." PSR at 24 n.4. In calculating the drug quantity the probation officer used the amount of cocaine powder seized from co-conspirator Carolyn Millard, the amount of crack seized from co-conspirator Eddie Joe Mitchell, the amount of cocaine powder seized from co-defendant Victor Freeman, the amount of crack seized from co-conspirators Greg Vinson and Robert Davis, and the amount of crack and powder cocaine seized from co-defendant Tracy Ellis. PSR at ¶ 76. The amount purchased from Talley is not included in this amount.

In Benford's direct appeal, the Sixth Circuit stated:

> Nathan Benford not only fails to challenge the amount of drugs attributed to him, but also the uncontroverted evidence – witness testimony and otherwise – presented at trial shows that Benford trafficked in quantities far above the 50 grams of crack cocaine or 5 kilograms of cocaine powder required for sentencing under 21 U.S.C. § 841(b)(1)(A). Numerous witnesses testified that they had been involved with Benford in distributing kilogram quantities of cocaine or storing large quantities of crack cocaine for him. Benford even stipulated to the quantities of some of these drugs, such as the 1,369 grams of crack that co-defendant Eddie Joe Mitchell testified that he retrieved at Benford's direction. Myron Hilt testified that he had once delivered a kilogram of cocaine to Tramble at Benford's direction. On another occasion, Benford and Hilt were counting money after selling a kilogram of cocaine, when Rena Benford asked them if they needed help. Although they told her they did not, they directed that she put the money in a safe located in the Uptown Supper Club. Hilt also testified that he and Benford had once purchased a kilogram of cocaine, and that Rena Benford delivered some of the money to her husband in order that he might make the purchase. Co-defendant Cleveland Billingsley testified that upon his release from prison in 1998, he received several ounces of crack and powder cocaine directly from Benford. He also testified that he witnessed Benford possessing other quantities of cocaine, including a kilogram of cocaine powder that Benford distributed to Billingsley and to others. Co-defendant Tracy Ellis testified that she stored drugs in her apartment for Benford. Pursuant to a search warrant, police recovered 408.2 grams of crack and 148.5 grams of cocaine hydrochloride from Ellis's apartment. After reviewing the presentence report, which recounted the above-cited events regarding Benford's cocaine dealings and numerous others, the district court found that more than 3,000 grams of crack and 6,000 grams of cocaine hydrochloride were properly attributable to Benford. We have no doubt based on this uncontroverted evidence that a jury would have found beyond a reasonable doubt that Benford was involved with quantities of drugs well above the requisite amounts needed for sentencing under § 841(b)(1)(A).

*Stewart*, 306 F.3d at 324.

The Sixth Circuit found there was overwhelming evidence of Benford's involvement in the drug distribution conspiracy and that the amount of drugs for which Benford could be held

responsible was far in excess of the statutory threshold.  *Id.*  Moreover, Benford has not shown the stipulation, which served to more efficiently move the trial along, was in any way related to a possible guilty plea to the conspiracy count.  Benford has neither alleged, nor has he cited to any evidence, the government would have been amenable to a guilty plea to his initial indictment absent the aforementioned stipulation.  Thus, I conclude Benford has failed to show the stipulation was in any way material to the substantive issues in the case.

Accordingly, I conclude Benford's claim his trial counsel rendered ineffective assistance when he allowed Benford to enter the stipulation is without merit, and I **RECOMMEND** it be **DISMISSED**.

*Forfeiture*

In the tenth and final issue identified above, Benford asserts the district court lacked subject matter jurisdiction to enter a preliminary order of forfeiture, and thus his appellate counsel was ineffective for not challenging the preliminary forfeiture order on appeal [Doc. No. 1, Memorandum at 15].  The performance of appellate counsel is properly reviewed under the *Strickland* standard.  *Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir. 2004).  Not only is Benford required to show appellate counsel committed errors, he must also show his counsel's errors were so serious as to deprive him of a fair appeal.  "To establish ineffective assistance of counsel, it must be shown that counsel's performance was deficient *and* that the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable."  *Id.*  (citing *Strickland*, 466 U.S. at 687).

The Sixth Circuit has previously offered several non-exclusive considerations for determining

whether appellate counsel has performed competently under the first prong of the *Strickland* test.[2]
*See, e.g., Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999). Applying these considerations to the question of omitting issues on appeal, it has been held appellate counsel is not ineffective for failing to raise meritless arguments on appeal. *Greenup v. United States*, 401 F.3d 758, 770 (6th Cir. 2005). Appellate counsel also is not constitutionally ineffective for failing to raise every conceivable argument on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) (stating the decision as to what issues are to be pressed on appeal should be left to the superior ability of counsel and not every colorable issue need be raised); *Seymour v. Walker*, 224 F.3d 542, 551 (6th Cir. 2000) (stating appellate counsel does not have a constitutional duty to "raise every conceivable colorable claim on appeal in order to fulfill his duty to his client.").

Regarding forfeiture, the courtroom minutes for the tenth day of Benford's trial state:

> Forfeiture – 2nd phase of trial. [Defendants] Nathan & Rena Benford agree to the forfeiture of their interest in the Uptown Supper Club and $20,000 seized at their residence on 7/30/98. [Defendant] Nathan Benford also agrees to the forfeiture of the Ford Econoline Van . . . Trial concluded.

[Case No. 1:98-CR-77-02, Doc. No. 489].

Subsequently, on April 27, 1999, the district court entered an "Agreed Preliminary Order of Forfeiture" which states in pertinent part:

---

[2] The considerations are: "(1) Were the omitted issues 'significant and obvious'? (2) Was there arguably contrary authority on the omitted issues? (3) Were the omitted issues clearly stronger than those presented? (4) Were the omitted issues objected to at trial? (5) Were the trial court's rulings subject to deference on appeal? (6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable? (7) What was appellate counsel's level of experience and expertise? (8) Did the petitioner and appellate counsel meet and go over possible issues? (9) Is there evidence that counsel reviewed all the facts? (10) Were the omitted issues dealt with in other assignments of error? (11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?" *Coyle*, 171 F.3d at 427-28.

WHEREAS, on March 5, 1999, after trial, a duly empaneled jury returned a guilty verdict against the defendant, Nathan Benford, as to Count 1, which charged a violation of Title 21, United States Code, Section 846; and

WHEREAS, on March 8, 1999, the defendant, Nathan Benford, without conceding his guilt as to Count 1, waived his right to a special verdict and agreed to forfeit to the United States his interest in the following assets and property which were named in the superseding indictment:

a.     Real property located in the City of Chattanooga, Hamilton County, Tennessee, having a mailing address of 2510 E. Main Street, Chattanooga, Tennessee, and being more particularly described in Warranty Deed dated October 11, 1996, and recorded in Deed Book 4763, Page 895, in the Register's Office for Hamilton County, Tennessee.

b.     The forfeiture of Twenty Thousand Twelve Dollars ($20,012.00) in U.S. currency is in full and complete satisfaction of the amount of Three Million Dollars ($3,000,000.00) charged as proceeds from the sale of cocaine hydrochloride and cocaine base "crack" in Count 1 of the superseding indictment.

c.     One 1996 Ford Econoline 150 . . .

[Case No. 1:98-CR-77-ALL; Doc. No. 549]. The "Agreed Preliminary Order of Forfeiture" is signed by both Benford's trial counsel and counsel for the government [*id.*].

"Criminal forfeiture is a form of punishment designed to 'divest [a] criminal defendant of the profits of the illegal activity for which he has been convicted.'" *United States v. Ferrario-Pozzi*, 368 F.3d 5, 8 (1st Cir.), *cert. denied*, 125 S. Ct. 89 (2004) (quoting *United States v. Gilbert*, 244 F.3d 888, 919 (11th Cir. 2001)). "[I]t is a part of the sentence rather than the substantive offense." *Id.* (quoting *Libretti v. United States*, 516 U.S. 29, 38-39 (1995)). Thus, "Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure explicitly requires that a forfeiture order 'be made part of the sentence

28

and be included in the judgment.'" *Id.* (quoting Fed. R. Crim. P. 32.2(b)(3)).

Benford's reliance on *United States v. Petrie*, 302 F.3d 1280, 1284 (11th Cir. 2002) is misplaced. In *Petrie*, the United States Court of Appeals for the Eleventh Circuit vacated a forfeiture order which was entered six months after sentencing on the ground Fed. R. Crim. P. 32.2 requires that forfeiture be made a part of the judgment.[3] The district court's Amendment Judgment of August 26, 1999, specifically provides Benford would forfeit his interest in the property at 2510 E. Main Street and $20,012.00 in U.S. Currency to the United States [Case No. 1:98-CR-77-02, Doc. No. 799 at 6]. Therefore, Benford's assertion the district court lacked subject matter jurisdiction over the "Agreed Preliminary Order of Forfeiture" on the ground that it failed to comply with Fed. R. Crim. P. 32.2 by incorporating forfeiture into its judgment is without merit. There is absolutely nothing in the record to indicate Benford's counsel failed to raise a valid issue on appeal that would have revealed some reversible error. Consequently, Benford's appellate counsel was not ineffective when he failed to raise this meritless issue in Benford's direct appeal.

Accordingly, I conclude Benford's claim his appellate counsel rendered ineffective assistance on direct appeal when he failed to challenge the district court's subject matter jurisdiction over the "Agreed Preliminary Order of Forfeiture" is without merit, and I **RECOMMEND** it be **DISMISSED**.

***Appeal From This Action***

In addition, after review of this case pursuant to 28 U.S.C. § 1915(a)(3) and Rule 24 of the

---

[3] In *Ferrario-Pozzi*, the United States Court of Appeals for the First Circuit stated it "assume[d] without deciding, the correctness of the Eleventh Circuit's rule that failure to make forfeiture a part of the judgment provides grounds for vacating a prior or subsequent order." 368 F.3d at 8.

Federal Rules of Appellate Procedure, I **RECOMMEND** the court **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, I **RECOMMEND** any application by Benford for leave to proceed *in forma pauperis* on appeal be **DENIED**. 28 U.S.C. § 1915(a)(3); Fed. R. Civ. P. 24. I further **RECOMMEND** that should Benford file timely notice of an appeal, such notice should be treated as an application for a certificate of appealability, which should be **DENIED** since he has failed to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Rule 22(b) of the Federal Rules of Appellate Procedure.

## IV. Conclusion

Accordingly, and as set forth more fully above, it is **RECOMMENDED**[4]:

1). Benford's § 2255 motion [Doc. No. 1], including the motion for an evidentiary hearing and appointment of counsel to assist him at that evidentiary hearing [Doc. No. 1, Memorandum at 14], be **DENIED AND DISMISSED WITH PREJUDICE**;

2). Any application by Benford for leave to proceed *in forma pauperis* on appeal be **DENIED**; and

---

[4] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide de novo review where objections to this Report and Recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

3).      Should Benford file a timely notice of an appeal, such notice be treated as an application for a certificate of appealability and **DENIED**.

s/_Susan K. Lee_

SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE